**Marilyn TYSON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. Civ.A. 00–KK–309.**

United States District Court, D. Colorado.

Aug. 7, 2000.

**1268**

Ann J. Atkinson, Aurora, CO, for plaintiff.

Michael E. Hegarty, Assistant U.S. Attorney, Denver, CO, Yvette G. Keesee, Special Assistant U.S. Attorney, Denver, CO, for defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This Court has jurisdiction of this appeal pursuant to 42 U.S.C. § 405(g). On November 22, 1996, Mrs. Tyson applied for disability benefits under Title II of the Social Security Act (42 U.S.C. § 402 *et seq.*) The Federal Old Age, Survivors, and Disability Insurance program (Title II) provides benefits to individuals who meet the definition of disability found at 42 U.S.C. § 423(d)(1)(A):

> The term "disability" means ... inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; ....

The Defendant found that Mrs. Tyson did not meet the definition of disability quoted above, and denied her claim at all levels of administrative review. The final administrative action in this case was the Action of Appeals Council on Request for Review dated December 10, 1999.

Mrs. Tyson filed this action within the time allowed on February 10, 2000. The decision is reversed and remanded for payment of benefits.

Mrs. Tyson was born November 29, 1947. She has low back pain resulting from a spinal disorder, and underwent a laminectomy at L4–S1 and discectomy at L5–S1 in 1993. Post operative MRI tests reveal post operative changes, epidural fibrosis, and disc protrusions at L4–5 and L5–S1.

Mrs. Tyson had an excellent work history until her onset date, November 21, 1995. During the last two years of work, she modified her work schedule, but her pain was unrelenting and her condition continued to worsen. She finally left work on the advice of her treating physician, Dr. Heaton.

At the hearing, she testified to a very limited lifestyle, a routine of changing position frequently and lying down with ice on her back several times during the day. She takes Percocet several times per week, and daily takes Darvocet, Carafate, Paxil and Ibuprophen. On the advice of her doctor, she walks about one-half mile at a time for a total of one and one-half to two miles per day or uses a treadmill if her pain permits. Although the ALJ stated that Mrs. Tyson's testimony appeared sincere, he nonetheless found her not fully credible with regard to her allegations of pain. There is absolutely nothing in the record to support this finding. All evidence is to the contrary.

At the request of her long-term disability insurance carrier, Mrs. Tyson was examined by an independent medical examiner, Greg Reichhardt, M.D., who gave her restrictions that precluded all stooping. The ALJ ignored the no stooping restriction, and discounted the opinion of her

treating physicians, finding their opinions inconsistent with those of Dr. Reichhardt and her treating orthopedist.

The ALJ found that Mrs. Tyson had a residual functional capacity that included the ability to stoop occasionally, despite the fact that Dr. Reichhardt had said she should not stoop at all. No other doctor specifically addressed this issue.

Plaintiff sent additional records and legal argument to the Appeals Council, but those items were neither considered nor mentioned in its December 10, 1999 decision, nor were they included in the record submitted by the Defendant in this action. The records were added to the record on appeal by court order dated June 7, 2000.

■■■■ In this circuit, substantial weight must be given to the opinion of the treating physician unless there is good cause to disregard it. *Goatcher v. Dep't of HHS,* 52 F.3d 288, 289–90 (10th Cir.1995). Under 20 C.F.R. § 404.1527(d)(2), the treating physician's opinion must be given controlling weight as long as it is supported by medically acceptable clinical and laboratory diagnostic techniques. The longer a source has treated the claimant, the more weight must be given to that source's opinion. 20 C.F.R. § 404.1527(d)(2)(i).

■■■ Michael Metros, M.D., had been Mrs. Tyson's treating physician for over a year at the time of the hearing. Dr. Metros had taken over the practice of Dr. Heaton, who had treated her since at least 1993. Both physicians opinions represent a long-term picture of Mrs. Tyson's condition, and their opinions are entitled to controlling weight under the regulations. Dr. Metros opined that Mrs. Tyson must alternate sitting and standing every 20–30 minutes and that she needed to lie down and rest ½–2 hours in every work day. He further restricted her to one hour total of work per day.

The ALJ rejected these opinions, however, saying that Dr. Metros' conclusions were not supported by his clinical findings. In his decision, the ALJ then listed the clinical findings of Dr. Metros, without stating why these findings did not support

his conclusions. Dr. Metros' examination notes clearly demonstrate signs and symptoms that reasonably lead to the restrictions given.

Dr. Metros is the physician who recommended to Mrs. Tyson that she discontinue working due to her physical condition. Mrs. Tyson did not willingly leave her job, but felt she had no other option if she was to achieve any amelioration of her pain. Her doctor's opinion as to her restrictions forbids her to return to her past relevant work.

As further rationale for rejecting the treating physician's opinion, the ALJ states it is in conflict with the opinion of the consultative examiner, Dr. Reichhardt, who only saw Mrs. Tyson one time, and whose opinion even the ALJ did not fully adopt, and Dr. Branan, her treating orthopedic surgeon. However, there is nothing in Dr. Branan's notes and records that specifically conflicts with Dr. Metros' residual functional capacity determination. Indeed, Dr. Metros' determination is much more specific than Dr. Branan's, and amplifies his opinion without contradicting it.

The ALJ rejected the treating physician's opinion without good cause, and therefore erred as a matter of law.

The ALJ adopted the opinion of an independent medical examiner, Dr. Reichhardt, regarding Mrs. Tyson's residual functional capacity, but then failed to include all of the restrictions given by that doctor. He specifically found Dr. Reichhardt "more persuasive" than Mrs. Tyson's treating physicians. Dr. Reichhardt listed several restrictions, including one that restricted Mrs. Tyson from any stooping at all. Without explanation, the ALJ ignored this crucial restriction.

The significance of the restriction on stooping is found in Social Security Ruling 96–9p. That ruling requires a claimant who has the residual functional capacity for less than a full range of sedentary work to be considered disabled if her restrictions would significantly erode the occupational base for sedentary work. The

ruling specifically provides that the ability to stoop is required in most sedentary occupations, and that a complete inability to stoop will significantly erode the occupational base for sedentary work and require a finding of disabled. Had the ALJ included all of the restrictions given by Dr. Reichhardt, including the complete restriction from stooping, he would have been compelled to find Mrs. Tyson disabled. The ALJ failed to provide legally significant reasons for rejecting the evidence.

It is clear from the record that the Defendant was required to find Mrs. Tyson disabled. Additional proceedings would only serve to delay Mrs. Tyson's receipt of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996), *Andler v. Chater*, 100 F.3d 1389, 1394 (8th Cir.1996), and *Salas v. Chater*, 950 F.Supp. 316, 320 (D.N.M.1996).

The ALJ's decision was made at Step 4 of the sequential evaluation process. He concluded that Mrs. Tyson could return to her work as a customer service clerk, despite her physician's recommendations to the contrary. The ALJ based his decision on the testimony of the vocational expert.

▮ Before he can find a claimant not disabled at Step 4, *Winfrey v.. Chater*, 92 F.3d 1017 (10th Cir.1996) requires that the ALJ evaluate the claimant's mental and physical residual functional capacity, that he determine the demands of her past relevant work, and that he determine whether the claimant has the ability to meet the job demands despite the mental and physical limitations. The ALJ himself must make the required findings based on the record, including his own evaluation of the claimant's ability to do her past relevant work. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir.1996). He failed to do so with respect to Mrs. Tyson.

The substantial evidence of record establishes Mrs. Tyson cannot return to her past relevant work, and the analysis should have proceeded to Step 5 of the sequential evaluation process. If the restrictions given by Dr. Reichhardt are accepted in their entirety, or if the restrictions given by her treating physician are accepted, Mrs. Tyson must be found disabled at Step 5 using Social Security Ruling 96–9p.

▮ An evaluation of Mrs. Tyson's credibility requires an assessment of all of the factors cited *in combination*. When several of the factors relied upon to discount a claimant's credibility are unsupported or contradicted by the record, that determination cannot stand. *Huston v. Bowen*, 838 F.2d 1125, 1132 at n. 7 (10th Cir.1988). Despite the ALJ's own statement that Mrs. Tyson testified sincerely, he found her "not fully credible." None of the reasons cited by the ALJ for discounting Mrs. Tyson's credibility, however, are supported in the record.

First, the ALJ finds that Mrs. Tyson's work activity after her surgeries demonstrates she can work despite her pain. In fact, her persistent attempts to work with her impairments serve to bolster her credibility. She has a strong work ethic and only left work reluctantly on the advice of her doctor, as her condition worsened. It was because her pain had increased that her doctor advised her to leave work.

Second, the ALJ finds Mrs. Tyson not credible because he says that the medical records do not support her allegations of pain. He fails to articulate how those records serve to deprecate her credibility. A mere recitation of the evidence does not suffice. Granted, her physicians all said she could lift more than she stated at the hearing, but the differences are not significant. Moreover, her testimony was to the effect that *when* she lifted, she had to move her arms away from her body and this movement resulted in more pain. The primary reason for her disability is not the restriction on the amount she can lift, but rather the need to ameliorate her pain by frequently resting, applying ice packs and taking strong pain medication.

▮ The ALJ ignored evidence that supported Mrs. Tyson's credibility, including her excellent work history. Where a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work.

Cf. *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir.1983).

The ALJ selected insignificant factors to discount Mrs. Tyson's credibility rendering his findings inconsequential.

Defendant's own regulations require the Appeals Council to consider any new evidence presented to it, if it is new, material, and relates to the time period before the ALJ's decision. Here, however, the Appeals Council did not consider the evidence contained in Plaintiff's Exhibit A (adopted as part of the record by Court order dated June 7, 2000).

In fact, nothing even suggests the Appeals Council decision maker had this evidence before her at the time of her decision. It is not mentioned in the Action of Appeals Council on Request for Review, nor was it submitted as part of the record on Appeal.

Exhibit A contains medical evidence which, although dated after the ALJ's decision (January 5, 1998), related back to the time period before that date. It contained statements from her treating orthopedist such as, "Her pain has gradually become more severe and disabling for her, to the point where she is unable to continue with activities of daily living." The MRI confirmed Dr. Frey's assessment of longstanding spinal impairments. In his March 27, 1998 clinical notes, Dr. Frey found that her pain was worse with any activity, and only partially relieved by rest, thus confirming her statements at the hearing.

### CONCLUSION

The Defendant's decision regarding Mrs. Tyson's disability cannot stand. He failed properly to consider Mrs. Tyson's treating physician's opinion. He inexplicably adopted only part of the independent physician's opinion, leaving out the crucial portion that would have required a finding of disabled. He failed to make adequate findings regarding Mrs. Tyson's past relevant work when he concluded that she could return to that work. His findings regarding Mrs. Tyson's credibility are baseless and indeed contrary to the great weight of evidence that support her credibility. Moreover, the additional evidence provided to the Appeals Council and there ignored enhanced Mrs. Tyson's credibility.

The Defendant's decision is reversed and the case remanded for payment of benefits.