**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

APRIL JIMISON, o/b/o Sherrie D. Sims,
deceased,

        Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[*]

        Defendant-Appellee.

No. 12-5093
(D.C. No. 4:10-CV-00692-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

---

April Jimison, on behalf of Sherrie D. Sims, appeals from a district-court order

affirming the Commissioner's denial of Ms. Sims's applications for Social Security

---

[*]      In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

disability and Supplemental Security Income benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## I.    BACKGROUND

Ms. Sims held a bachelor's degree in business administration and had past work experience as a cashier, hand packer, presser, apartment manager, and car hop. She was 45 years old when she filed her benefits applications, claiming that she was disabled by bipolar disorder and a rash on both hands. After her applications were denied initially and upon reconsideration, she had a hearing before an administrative law judge (ALJ) on April 15, 2009. The ALJ employed the five-step sequential process for determining disability. *See Wall v. Astrue,* 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing process). At step one the ALJ found that Ms. Sims had not engaged in any substantial gainful employment since her alleged onset date, September 26, 2006. The ALJ found at steps two and three that Ms. Sims had four severe impairments—bipolar disorder, chronic low back pain, obesity, and sleep apnea—but none of them met or equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ then found that Ms. Sims retained the residual functional capacity (RFC) to perform the full range of sedentary work provided she had the option to sit or stand. At step four the ALJ determined that Ms. Sims's RFC precluded her from performing any of her past relevant work. At step five the ALJ relied on the testimony of a Vocational Expert (VE) in finding that Ms. Sims could perform two unskilled, sedentary jobs that exist in significant numbers in the regional

and national economy: order clerk and semiconductor assembler. The ALJ further ruled at step five, apparently in the alternative, that "[b]ased on a[n] [RFC] for the full range of sedentary work, considering [Ms. Sims's] age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.21." Aplt. App., Vol. 2 at 18.

After the Appeals Council denied review of the ALJ's decision, Ms. Sims sought judicial review in the United States District Court for the Northern District of Oklahoma. The district court affirmed, and Ms. Jimison has appealed to this court on Ms. Sims's behalf.

## II.     DISCUSSION

Our review is limited to determining whether the agency's factual findings are supported by substantial evidence based on the record as a whole and whether the Commissioner applied the correct legal standards. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett*, 231 F.3d at 689 (internal quotation marks omitted). In conducting our review we cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

On appeal Ms. Jimison claims that the ALJ erred in (1) formulating Ms. Sims's RFC and a hypothetical question to the VE, (2) considering the medical-source

opinions, (3) evaluating Ms. Sims's credibility, and (4) evaluating her obesity. We will address the arguments in that order.[1]

###### A.    RFC/hypothetical question

Ms. Jimison contends that the ALJ erred in omitting a number of limitations and impairments from his RFC finding and from a hypothetical question he posed to the VE. In his hypothetical to the VE, the ALJ stated that Ms. Sims could perform the full range of sedentary work and could do so "either sitting down or standing up, whichever way she wanted to." Aplt. App., Vol. 2 at 37. The VE then identified two jobs Ms. Sims could perform: order clerk and semiconductor assembler. When Ms. Sims's attorney asked the VE whether she understood the hypothetical to mean that the "sit/stand option [was] at will," the VE answered "Yes." *Id.* at 38.

We agree with Ms. Jimison that an ALJ "must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). But the ALJ did that here. The option to sit or stand at will permits the claimant to control the frequency at which she alternates positions. No greater specificity would be possible. Although the ALJ did not specify in his

---

[1]    We note that Ms. Jimison has not challenged, nor has either party even mentioned, the ALJ's alternate step-five determination that Rule 201.21 of the Medical Vocational Guidelines (the "Grids") directed a finding that Ms. Sims was not disabled. But we do not affirm the ALJ's decision on this unchallenged, alternate basis for the step-five finding because most of Ms. Jimison's arguments concern alleged errors affecting the ALJ's predicate RFC finding. Although we could consider this a Grids-based case and decline to address Ms. Sims's argument that the ALJ erred in giving the hypothetical to the VE, we will not do so because the parties have not developed any legal argument regarding the ALJ's use of the Grids.

- 4 -

written RFC that the sit/stand option was at will, there can be no question that this was the ALJ's finding because he did not correct the VE when the VE told Ms. Sims's attorney that the vocational assessment was based on that assumption.

We likewise disagree with Ms. Jimison's contention that the ALJ should have specified, in both his RFC and his hypothetical to the VE, the amount of weight that Ms. Sims could lift. The ALJ limited Ms. Sims to sedentary work "as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a)." Aplt. App., Vol. 2 at 14. Under those regulations, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ's hypothetical and RFC therefore impliedly set a 10-pound limitation on Ms. Sims's lifting ability. As Ms. Jimison correctly points out, Social Security Ruling 96-8p requires an ALJ to conduct a function-by-function assessment of seven strength demands (including lifting) before expressing the RFC in terms of an exertional category. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). And we recognize that Ms. Sims testified that she could lift no more than five pounds. But Ms. Jimison has not directed us to, nor can we locate, any findings in the medical records regarding limitations on Ms. Sims's lifting capacity. Absent such record support that Ms. Sims could not lift 10 pounds at a time, we will not find reversible error in the ALJ's failure to state a specific lifting limit beyond stating that she could perform sedentary work.

Ms. Jimison further argues that in both the RFC and the hypothetical to the VE the ALJ should have included Ms. Sims's bipolar disorder; obesity; moderate impairments in concentration, persistence, and pace; and limitations on public contact. We disagree. "The RFC assessment considers only *functional limitations and restrictions* that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* at *1 (emphasis added). The same is true of hypotheticals to the VE. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (finding error when ALJ omitted from hypothetical the functional limitations arising from impairment). Ms. Jimison fails to point to functional limitations improperly omitted by the ALJ.

Bipolar disorder and obesity are impairments, not "functional limitations and restrictions" resulting from an impairment. The record does not indicate that they caused functional limitations for Ms. Sims. In particular, we note medical records from the Grand Lake Mental Health Center showing that medication was controlling Ms. Sims's bipolar symptoms. *See id.*, Vol. 3 at 246 (January 15, 2008) ("mood stays fairly stable with meds"); 315 (March 5, 2008) ("[s]ays she's doing very well on Seroquel . . . due to her anger and Atarax . . . , said that's her best friend, helps her anxiety"); 354 (March 4, 2009) ("feels as if she is on meds that are working for her"); 367 (March 4, 2009) ("reports meds [including two antidepressants] are working well"); 393 (July 16, 2008) ("reports she's doing well on current medication"); 396 (May 21, 2008) (same). An impairment is not disabling when medications

adequately control it without significant side effects. *See Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir. 1987).

As for the finding that Ms. Sims had moderate limitations in concentration, persistence, and pace (set forth in a mental assessment prepared by a nonexamining state-agency consultant, Carolyn Goodrich, Ph.D.), Ms. Jimison has not challenged the ALJ's statement that the limitations are not an RFC assessment, but are used only to rate mental impairments at steps two and three. In assessing functional capacity, Dr. Goodrich opined that Ms. Sims could "remember, understand and carry out simple and most complex tasks" and "relate to coworkers and supervisors." Aplt. App., Vol. 3 at 224. The ALJ credited this opinion and found that it supported the appraisal of Dr. Jan Kent, an examining consultant, that Ms. Sims could "concentrate on complex tasks during a normal workday" and "adapt to a complex work environment." *Id.* at 189. Although Dr. Kent stated that it was "not clear whether [Ms. Sims] could persist on an ongoing, day to day basis, without relapse," *id.*, this statement is too indefinite to be of probative value. Hence, we disagree that the ALJ was required to include Ms. Sims's moderate limitations in concentration, persistence, and pace in either his RFC or his hypothetical to the VE.

Dr. Goodrich also found that Ms. Sims was markedly limited in her ability to interact with the general public, and both Dr. Goodrich and Dr. Kent thought that Ms. Sims should have limited public contact. The ALJ noted these opinions but did not include a public-contact limitation in his RFC or his hypothetical to the VE.

Ms. Jimison urges us to reverse on this ground, but in the district court she challenged only one of the two jobs identified by the VE—order clerk—as being incompatible with a public-contact limitation. The district court held that there was no reversible error because the other job—semiconductor assembler—existed in large numbers (6,000 regionally and 80,000 nationally, according to the VE), and that this was sufficient to fulfill the Commissioner's step-five burden to show that Ms. Sims could perform one or more occupations with a significant number of available positions. *See Evans*, 55 F.3d at 532 (discussing step-five burden under 20 C.F.R. § 404.1566(b)). Ms. Jimison "is limited to the issues [she] properly preserve[d] in the district court and adequately presents on appeal." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996). And we agree with the district court that the job of semiconductor assembler fulfilled the Commissioner's step-five burden. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329-32 (10th Cir. 1992) (considering 650-900 in-state jobs to be a significant regional number). Accordingly, we will not overturn the ALJ's decision for failure to note the limitation on Ms. Sims's public contact in his RFC or his hypothetical to the VE.

### B. Medical-source opinions

Ms. Jimison claims that the ALJ ignored three medical-source opinions. She first points to a mental-status report stating that Ms. Sims's "prognosis is guarded" and she "is unable to respond appropriately to normal work pressures." Aplt. App., Vol. 3 at 264. This report, which is undated and unsigned, also states that "clinician

- 8 -

is unable to obtain a detailed description of the client's activities due to minimal contact with the client." *Id.* We disagree that the ALJ erred with respect to this report. "[A]n ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). Other evidence (the reports of Dr. Goodrich and Dr. Kent) contradicted this mental-status report, and the report itself was not significantly probative because it was unsigned, undated, and admitted to "minimal contact" with Ms. Sims. We conclude that the ALJ was not required to discuss it. *See id.*

Second, Ms. Jimison claims that the ALJ gave inadequate consideration to Dr. Kent's opinion that it was "not clear whether [Ms. Sims] could persist on an ongoing, day to day basis, without relapse." Aplt. App., Vol. 3 at 189. But we have already considered this opinion to be too indefinite to be of probative value. The ALJ was not required to address it specifically in his decision.

Third, Ms. Jimison contends that the ALJ should not have ignored Dr. Kent's opinion that, in Ms. Jimison's words, Ms. Sims "was incapable of managing her own funds in her own best interest." Aplt. Opening Br. at 22. But Dr. Kent's opinion did not suggest that Ms. Sims's fund-handling ability affected her ability to work. Dr. Kent's statement reads in full: "The claimant appears to be incapable of

managing her funds independently, due to problems with excessive spending caused by her Bipolar Disorder." Aplt. App., Vol. 3 at 189. Dr. Kent offered no opinion on how this would affect Ms. Sims's ability to work, nor is it evident from the record. The ALJ was not required to discuss it.

In addition to the foregoing specific claims of error in the ALJ's handling of the medical-source evidence, Ms. Jimison argues that "[t]he ALJ failed to weigh any of the medical source and other source opinions in accordance with the proper factors. He did not weigh the opinion [sic] at all and he did not explain why. He did not properly explain why he chose one opinion over another." Aplt. Opening Br. at 23 (citation omitted). But these arguments are mere boilerplate. They lack development and fail to identify what medical opinions were improperly weighed by the ALJ. She has thereby waived our review of these conclusory contentions. *See Berna*, 101 F.3d at 632-33.

### C. Credibility

Ms. Jimison advances several arguments that the ALJ erred in finding Ms. Sims not credible. Our review is guided by established legal principles. An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Thus, "findings as to credibility

should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (brackets and internal quotation marks omitted). But "[c]redibility determinations are peculiarly the province of the finder of fact." *Id.* (internal quotation marks omitted).

Ms. Jimison first asserts that "[t]he ALJ did not mention the . . . factors" set forth in *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987). Aplt. Opening Br. at 23. In *Luna* we set out a framework for evaluating a claimant's subjective allegations of pain and identified a nonexhaustive set of factors, in addition to medical tests, that guide the consideration of the credibility of pain testimony. *See* 834 F.2d at 163-66. We expanded those "*Luna*" factors in *Huston v. Bowen*, being careful to note again that they were not "exhaustive" but "merely illustrative." 838 F.2d 1125, 1132 n.7 (10th Cir. 1988). As stated in *Huston*, those factors are:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1132. Similar factors are set forth in Social Security Ruling 96-7p,[2] and we have said that ALJs "should consider" them, *Hamlin v. Barnhart*, 365 F.3d 1208,

---

[2] Those factors are "[t]he individual's daily activities"; "[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms"; any "[f]actors

(continued)

1220 (10th Cir. 2004). But we do not require an ALJ to conduct a "formalistic factor-by-factor recitation of the evidence"; it suffices if he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "[C]ommon sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Thus, we see no error in the mere absence of a rote recitation of the *Luna* factors. We do, however, address Ms. Jimison's more-specific arguments that implicate some of the factors.

Ms. Jimison contends that the ALJ (1) formulated his RFC before making his credibility finding, (2) used meaningless boilerplate, and (3) did not explain why he rejected some of Ms. Sims's testimony or which testimony he accepted as true. We see no error requiring reversal. First, although the ALJ's opinion recited his RFC finding before discussing credibility, there is no indication that the ALJ did not factor in Ms. Sims's credibility.

---

that precipitate and aggravate the symptoms"; "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms"; "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms"; "[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board)"; and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3.

Second, the ALJ's use of boilerplate[3] is "insufficient" only "in the absence of a more thorough analysis." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). Here, the ALJ provided a more thorough analysis. He summarized Ms. Sims's testimony about her symptoms and then discussed the medical evidence, explaining how it undermined Ms. Sims's credibility regarding her limitations.

Third, although the ALJ did not expressly indicate which parts of Ms. Sims's testimony he found not credible, it is clear enough, reading his decision as a whole, that he considered her not credible regarding her postural and lifting limitations, the extent of her limitations due to her bipolar disorder, and any limitations due to her shortness of breath, edema, or eczema. Thus, we see no basis for remanding on the ground that the ALJ was not specific in his credibility analysis.

Ms. Jimison next advances several, mostly conclusory, claims of error with respect to the ALJ's credibility finding. First, she states: "There was no direct correlation between any ADLs [Activities of Daily Living] with actual ability to do labor, and no inconsistencies demonstrated. Minimal ADLs are not indicative of an

---

[3] The ALJ's opinion contained the following familiar language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Aplt. App., Vol. 2 at 15.

ability to work on a full time basis." Aplt. Opening Br. at 25 (citation omitted). The ALJ, however, did not discuss Ms. Sims's ADLs, let alone use them as a basis for determining her credibility, so we fail to see how this argument is relevant.

Ms. Jimison also claims that the ALJ erred in failing to consider Ms. Sims's substantial work record as a favorable credibility factor. In support, Ms. Jimison relies on *Tyson v. Apfel*, where the district court considered an ALJ's finding that a claimant's attempts to work after surgery demonstrated that she could work despite her pain. *See* 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000). The court viewed her efforts as favorable to her credibility, noted that she stopped working "reluctantly on the advice of her doctor," and concluded that the ALJ's adverse credibility finding was "inconsequential" because "[t]he ALJ selected insignificant factors to discount [the claimant's] credibility." *Id.* at 1270-71. Here, the ALJ did not select insignificant factors in finding Ms. Sims not credible regarding her limitations and there is no indication that Ms. Sims stopped working on the advice of a doctor. *Tyson* is distinguishable, and we see no error in the ALJ's failure to discuss Ms. Sims's work history. *See Qualls*, 206 F.3d at 1372 (requiring an ALJ only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility" rather than conduct a "formalistic factor-by-factor recitation of the evidence").

Ms. Jimison further claims that the ALJ "miscast the evidence of record," Aplt. Opening Br. at 25, when he stated that many of Ms. Sims's "complaints have little or no supporting evidence," Aplt. App., Vol. 2 at 16. We read the ALJ's use of

- 14 -

the word "complaints" to mean Ms. Sims's testimony regarding the limiting effects of her impairments. So construed, the statement stands for nothing more than the proposition that the medical evidence offered little or no support for the claimed severity of the limiting effects of Ms. Sims's impairments, and that proposition is supported by the evidence.

Ms. Jimison further complains that the ALJ did not give appropriate consideration to Ms. Sims's suicidal ideations or her medications. Citing records from June 2005 to February 2009, she states that Ms. Sims was often suicidal and blamed her medications for it, that her medications had other side effects, and that her medications required adjustment on several occasions. The ALJ limited his discussion to two reports: in August 2007, Dr. Kent stated that Ms. Sims's medications seemed to be helping with her bipolar symptoms, and on May 12, 2008, Ms. Sims alleged harmful side effects of her medications, including suicidal ideation. As the Commissioner points out, however, other medical records (and in some instances the same medical records cited by Ms. Jimison), particularly those in late 2008 and early 2009, show that Ms. Sims had no suicidal ideations and that her medications were working without complaints of side effects. Apparently it took some time for Ms. Sims's medications to be properly adjusted, and once they were, she acknowledged their effectiveness without side effects. We therefore conclude that the ALJ's failure to discuss her medication history at length does not undermine

his finding that she was not credible regarding the severity of her limitations at the time of the hearing.

In addition, Ms. Jimison contends that the ALJ "did not consider [Ms. Sims's] relentless attempts to find relief." Aplt. Opening Br. at 29. But there can be no real doubt that the ALJ was aware of Ms. Sims's efforts, and his failure to mention the fact is not cause for reversal. *See Qualls*, 206 F.3d at 1372.

Ms. Jimison also claims that the ALJ erred in connection with Ms. Sims's allegations that she experienced swelling in her hands, knees, and ankles; inflammation in her hands (also apparently referred to as eczema); and recurrent staph infections. She notes that the ALJ cited two medical records reflecting that Ms. Sims did not have edema but points to numerous records documenting edema or inflammation. One of the records referencing edema is dated March 5, 2009, and is therefore more recent than the records cited by the ALJ. The ALJ also stated that there was no evidence supporting Ms. Sims's allegation of recurring staph infections, but Ms. Jimison identifies a number of medical records referencing staph infections, staph abscesses, or abscesses. These apparent errors by the ALJ do not require remand, however, because there is no medical evidence that Ms. Sims's edema, eczema, or staph infections, which appear to be episodic or transitory, posed any functional limitations that might call into question the ALJ's RFC finding. Thus, any error by the ALJ regarding Ms. Sims's credibility about the existence of these conditions was harmless.

Finally, Ms. Jimison asserts that none of Ms. Sims's doctors opined that her complaints were exaggerated and that the ALJ ignored this favorable credibility factor. Although the absence of any medical opinion that she was exaggerating has some bearing on overall credibility, *see Hamlin*, 365 F.3d at 1220, it is not dispositive when, as here, other substantial evidence supports the ALJ's credibility finding. Thus, we see no error in the ALJ's failure to note that none of Ms. Sims's doctors said that she was exaggerating.

In sum, we cannot substitute our judgment for the ALJ's, *Barnett*, 231 F.3d at 689, and after reviewing the entire record, *see Washington*, 37 F.3d at 1439, we find ample support for the ALJ's credibility finding.

**D.     Obesity**

Ms. Jimison claims error by the ALJ in finding Ms. Sims's obesity to be a severe impairment at step two but not including it in his RFC or at step five. She points out (1) that there is record evidence that Ms. Sims had degenerative joint disease or osteoarthritis, especially of her right knee, and had 30 to 40% narrowing of her left anterior descending coronary artery; (2) that the ALJ found that Ms. Sims's complaints of daytime somnolence were supported by positive testing for obstructive sleep apnea; and (3) that Ms. Sims considered herself "fat" and had shortness of breath. She then complains that the sit/stand option did not account for the impact of Ms. Sims's obesity on her ability to work.

The problem with this argument is that there is no record indication of any functional limitations from Ms. Sims's obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC for a full range of sedentary work with a sit/stand option. We therefore see no error in the ALJ's handling of Ms. Sims's obesity.

## III.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge