FILED
United States Court of Appeals
Tenth Circuit

April 29, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LINUS E. SHOCKLEY, SR.,

      Plaintiff-Appellant,

  v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 13-5105
(D.C. No. 4:12-CV-00003-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **McKAY**, and **ANDERSON**, Circuit Judges.

Linus E. Shockley, Sr., appeals from the district court's judgment affirming the denial of his applications for social security disability and supplemental security income benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

BACKGROUND

Mr. Shockley completed the 11th grade and has auto mechanic training. He had worked as a lot attendant, lube tech, lumber puller, parts puller, and pipe fitter. But, claiming that he was unable to perform these jobs any longer, Mr. Shockley, at the age of 43, applied for disability benefits on November 26, 2008, alleging that he had been disabled since November 12, 2006. He asserted he was unable to work due to various physical and mental maladies.[1]

After a hearing, an Administrative Law Judge (ALJ) determined that Mr. Shockley had a number of severe impairments: hypertension; gastroenterological reflux disease; hiatal hernia; right-thumb fracture; major depression, recurrent; and anxiety. But the ALJ concluded that none of these impairments equated to the Social Security Administration's listed impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Addressing Mr. Shockley's physical condition, the ALJ found that he had a residual functional capacity (RFC) to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, he could stand or walk for six hours or sit for six hours. He could climb stairs occasionally but he could never climb ladders, ropes, or scaffolding. He was limited to occasional bending, stooping, kneeling, crouching, and crawling, and he could occasionally perform fine manipulation or fingering and forceful gripping or twisting

---

[1] In an effort to avoid repetition, we recount Mr. Shockley's relevant medical records where appropriate to our disposition of his arguments.

with his dominant right hand. Mentally, the ALJ found that Mr. Shockley could do simple tasks and have superficial contact with the public, coworkers, and supervisors.

The ALJ found Mr. Shockley's medically determinable impairments would be reasonably expected to cause his alleged symptoms. However, the ALJ found Mr. Shockley lacked credibility to the extent that the severity of his complaints conflicted with the RFC.

With this RFC, the ALJ concluded that Mr. Shockley could not perform his past relevant work but he could perform other jobs that existed in significant numbers in the national economy. Therefore, the ALJ denied Mr. Shockley's applications at step five of the sequential evaluation process. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (describing the five-step sequential process).

After the Appeals Council denied review, Mr. Shockley filed a civil action in the United States District Court for the Northern District of Oklahoma. A magistrate judge affirmed the ALJ's decision, and this appeal followed.

## STANDARD OF REVIEW

Our task is limited to determining whether the agency's "factual findings are supported by substantial evidence and whether correct legal standards were applied." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v.*

*Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (internal quotation marks omitted). But we cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Barnett*, 231 F.3d at 689 (internal quotation marks omitted).

DISCUSSION

Mr. Shockley raises two general challenges to the ALJ's decision. First, he complains that the ALJ improperly evaluated the medical evidence supporting his disability claim. Second, he argues the ALJ erred in his determination that Mr. Shockley's complaints lacked credibility. We disagree on both issues.

## 1. Evaluation of the Medical Evidence

Mr. Shockley argues that the ALJ improperly evaluated the medical evidence in a number of ways. He first contends that the ALJ erred by not referring to or discussing 78 pages of medical records (Exhibits 1F to 6F, 12F, and 15F). We disagree. When an "ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he adequately considered [a claimant's] alleged impairments," we take him "at his word" when he "indicates he has considered all the evidence." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (brackets and internal quotation marks omitted). As our ensuing analysis demonstrates, the ALJ's discussion meets this test, so we can safely presume he considered the medical records.

Furthermore, the only evidence an ALJ is required to expressly discuss is "evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007,

1010 (10th Cir. 1996). None of the records falls within any of these categories. Most of those records predate Mr. Shockley's alleged disability onset date of November 12, 2006.[2] But the focus of the ALJ's inquiry is Mr. Shockley's medical records after the onset date. And the pre-insured-period records add nothing of significance that the ALJ was required to expressly discuss.

Of those records generated during the insured period, three pages (from Exhibit 6F) reflect Mr. Shockley's complaints of hypertension, increased triglycerides and cholesterol, and chest pain in January and February 2009. On two occasions he was given a prescription, and on another he was told to stop smoking, to go to the emergency room if his chest pain returned, and to get an EKG and lab work. *See* Appellant's App., Vol. 3 at 343-45. Another set of records (Exhibit 12F) shows a series of clinic visits in July and August 2009 where Mr. Shockley complained about swelling and numbness in his hands and feet, dizziness, headaches, nosebleeds, ear problems, shortness of breath, pain in his left arm, blurred vision, and vertigo. *See id.* at 389-94.[3] There are also associated blood-test results showing high cholesterol and triglycerides. *See id.* at 395-

---

[2] The records before he was insured generally reflect conservative treatment for his complaints of headaches, back pain, hiatal hernia, diverticular disease, dizziness, vertigo, gastrointestinal bleeding, and hyperlipidemia. Mr. Shockley points to records after his fall from a roof in 2004 that show headaches, disequilibrium, and dizziness. He claims that these symptoms were serious enough for his doctor to order an MRI and therefore the ALJ should have discussed them. However, the MRI did not reveal any impairments necessitating further treatment.

[3] In his decision, the ALJ mistakenly identified Exhibit 12F as Exhibit 18F. But it is clear from the discussion that he was referencing the substance of Exhibit 12F not Exhibit 18F. *See* Appellant's App., Vol. 2 at 88.

401. He was again given prescriptions and advice about not smoking. The final set of records (Exhibit 15F) consists of test results (carotid ultrasound and CT scans of his head and abdomen) for evaluation of abdominal pain with nausea and of headaches with blurred vision and nausea. Those tests showed no abnormalities. *See id.* at 405-13.

The ALJ was not required to discuss any of these records because, like the pre-insured-period records, they add nothing significant to an analysis of the severity of Mr. Shockley's impairments during the insured period.[4] They show essentially conservative treatment with negative test results concerning his headaches and abdominal pain, and none of them contains any opinions about the severity of his impairments. Moreover, the ALJ was aware of the conditions reflected in those records, and the test results showing elevated cholesterol and triglycerides are consistent with the ALJ's observation that Mr. Shockley was on cholesterol medication and had severe hypertension.

Mr. Shockley next argues that the ALJ improperly relied only on evidence from the consulting examiners' reports that favored his decision. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This argument contains multiple subparts that we address largely in order.

---

[4] Relatedly, Mr. Shockley argues that two consultative examiners should have said whether they had reviewed the contested medical records. He points to no authority for this proposition, but even assuming the examiners had some duty to state whether they reviewed them, we see no error given our conclusion that the ALJ did not err in declining to expressly discuss any of them.

One of the consulting examiners, Ashok Kache, M.D., conducted an internist exam in April 2009. The ALJ discussed the following findings from Dr. Kache's report: slight limitation in lumbar range of motion; normal range of motion in neck, shoulders, hips, and extremities; normal gait speed and an upright posture; no use of any assistive device; a reported sharp chest pain that sometimes radiated to the entire left side and numbed it; no shortness of breath; a negative gastrointestinal review; and elevated blood pressure (159/92). Mr. Shockley notes several of Dr. Kache's other findings that the ALJ did not discuss: an observation that he was able to rise up and walk on his heels and toes briefly but was somewhat off-balance, positive straight-leg raises bilaterally, pain with range of motion of the lumbar spine, tenderness, and muscle spasm. He claims that these findings support his allegations of dizziness, vertigo, imbalance, trouble walking, back pain, leg pain and tingling, and an inability to sit long enough for sedentary work. We see no error. The findings that the ALJ did not discuss consist of only mild impairments or limitations. Overall, nothing in Dr. Kache's report suggests any greater limitations than the ALJ accounted for in his RFC finding.

Mr. Shockley argues that the ALJ erred in not referring to Dr. Kache's grip-strength findings—16 and 12 kilograms in his left and right hands, respectively, which he claims are well below average. He also contends that the ALJ's limitation to "occasional . . . forceful gripping or twisting with the right hand," Appellant's App., Vol. 2 at 87, does not adequately account for Dr. Kache's opinion that he could effectively grasp tools like a hammer "on occasion," *id.*, Vol. 3 at 357. We see no error.

We fail to see a material distinction between Dr. Kache's opinion and the ALJ's limitation because a forceful grip is inherent in the ability to effectively grasp a hammer. We therefore conclude that the ALJ adequately accounted for the limitation Dr. Kache found with regard to grip strength despite not expressly discussing Dr. Kache's findings or opinion.

Mr. Shockley next complains that the ALJ erred in stating that Dr. Kache's conclusions were compatible with those of one of the nonexamining consultants, J. Marks-Snelling, D.O., because Dr. Marks-Snelling found no manipulative limitations despite commenting that there was nothing in the file to indicate why Mr. Shockley had grip strengths of 16 and 12 kilograms. This argument lacks merit because the ALJ's RFC finding accounted for Dr. Kache's opinion that Mr. Shockley is limited to occasional grasping of tools like a hammer, which was more favorable to Mr. Shockley than Dr. Marks-Snelling's opinion that he had no manipulative limitations. Hence, whether the two opinions were compatible is immaterial.[5]

Mr. Shockley next takes aim at the ALJ's treatment of a report issued by the mental consultative examiner, David E. Hansen, Ph.D. In his narrative, Dr. Hansen stated that Mr. Shockley was "moderately depressed," and in the diagnosis section of his report, he stated "Major Depression, Recurrent, Moderately Severe." *Id.* at 361. Seizing on the

---

[5] Mr. Shockley also argues that the ALJ erred in not stating what weight he afforded Dr. Marks-Snelling's opinions. We disagree. The ALJ made findings that in some instances tracked Dr. Marks-Snelling's opinions (ability to sit, stand, and walk) and in other instances were more restrictive (lifting capacity, postural and manipulative limitations), which shows what weight the ALJ afforded them.

latter verbiage and emphasizing the word "severe," Mr. Shockley claims the ALJ mischaracterized Dr. Hansen's report by interpreting this as a finding that Mr. Shockley was "only moderately depressed," *id.*, Vol. 2 at 88. Given that Dr. Hansen twice used the modifier "moderately," we cannot say the ALJ mischaracterized the opinion. Nor do we think that other statements in Dr. Hansen's report (that Mr. Shockley was a "marginal historian" and had a Beck Depression Inventory score "suggest[ing] severe subjective depressive symptoms," *id.*, Vol. 3 at 360) clearly refute the ALJ's characterization of Dr. Hansen's opinion that Mr. Shockley was "only moderately depressed."

Dr. Hansen also stated "there is a question regarding the possibility of borderline to low average intellectual functioning. Further assessment would be required in this regard." *Id.* at 361. Based on these statements, Mr. Shockley argues that the ALJ should have ordered further testing and so failed in his duty to develop the record. We disagree. Although an ALJ has a duty to develop the record even where, as here, a claimant is represented by an attorney, "[s]everal preconditions inform" that duty. *Wall*, 561 F.3d at 1062-63. "Under normal circumstances, the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development. Moreover, a claimant need not only raise the issue [he] seeks to develop, but that issue must also be substantial on its face." *Id.* at 1063 (citation and internal quotation marks omitted). "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* (internal quotation marks omitted).

At the close of the hearing before the ALJ, Mr. Shockley's attorney made passing reference to Dr. Hansen's opinion about the possibility of borderline intellectual functioning, but he did not expressly request the ALJ to further develop the issue. It is therefore questionable whether counsel fulfilled the duty to identify an issue requiring further development. In any event, we fail to see sufficient evidence to suggest a reasonable possibility that Mr. Shockley's level of intellectual functioning is, or contributes to, a disabling impairment. Despite finding that Mr. Shockley had some troubles on a mental skills test and "appear[ed] to have a reduction of persistence and pace," Dr. Hansen stated that "[h]e was able to follow a 3-step verbal command and a written one-step command," his "[g]ross mental status functioning is within normal limits, with the exception of some arithmetic difficulties," he "appear[ed] capable of managing his own finances," and he did "not exhibit significant difficulties with concentration, comprehension or broad cognitive functioning." Appellant's App., Vol. 3 at 361. On this record, and given the controlling legal principles outlined above, we cannot say the ALJ erred in failing to develop the administrative record with respect to Mr. Shockley's level of intellectual functioning. Moreover, the ALJ accounted for the limitations Dr. Hansen found by restricting Mr. Shockley to "simple tasks." *Id.*, Vol. 2 at 87.[6]

---

[6] Given Dr. Hansen's overall impressions and the ALJ's RFC finding, we reject Mr. Shockley's argument that the ALJ erred by failing to mention a number of his other findings: "conversational speed was rather slow"; "moved rather slowly"; "appeared lacking in energy, initiative and motivation"; "affect was generally flat";

(continued)

Mr. Shockley claims that Dr. Hansen's finding that he has a reduction in persistence and pace supports his claim that he is disabled. He points to the testimony of the Vocational Expert (VE) that such a limitation would affect the ability to perform two of the four jobs she identified: assembler and attacher. But the VE testified that the two other jobs—laundry sorter and pricer sorter—would not be "as restrictive concerning pace." *Id.* at 138; *see also id.* at 135-36 (describing the four jobs). According to the VE, there were 9,000 laundry sorter jobs regionally and 115,000 nationally, and 8,000 pricer sorter jobs regionally and 100,000 nationally. Based on this testimony and the ALJ's recognition of moderate difficulties in persistence and pace in his step-three analysis, it was conceivably error for the ALJ to rely on the attacher job. But the ALJ also relied on the laundry sorter and pricer sorter jobs, which combined for 17,000 jobs regionally and 215,000 jobs nationally. We do not think that any reasonable factfinder, even relying on only those two jobs, could have determined that suitable jobs did not exist in "significant numbers." *See* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant is not disabled if he can engage in "work that exists in significant numbers" in the national economy). Accordingly, any possible error with regard to the attacher job was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (setting forth harmless error standard and

"able to recall one of . . . three words following a several minute delay" but "was unable to recall the two additional words with semantic cueing or multiple choice"; "[s]erial-seven subtraction was accurate for two out of five responses"; "[h]e inaccurately copied intersecting pentagons"; "he does present with a flat affect, decreased conversational speed, decreased speed of motor movements, . . . and lack of initiative and spontaneity"; and "arithmetic difficulties." Appellant's App., Vol. 3 at 361.

noting that the much smaller number of jobs (650-900) considered in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), was a "gray area" in terms of significance).

Mr. Shockley argues that the ALJ should have given more weight to Dr. Hansen's opinion that he had moderate difficulties in persistence and pace than to the opinion of a nonexamining reviewer, Ron Smallwood, Ph.D., that he had none.  But it is readily apparent the ALJ did just that because the ALJ found moderate difficulties in persistence and pace.  We therefore also reject the contentions (*see* Appellant's Opening Br. at 27) concerning Dr. Smallwood's allegedly inconsistent findings regarding persistence and pace and the ALJ's alleged error in finding Dr. Smallwood's conclusions compatible with those of Dr. Hansen.[7]

Mr. Shockley next takes issue with the ALJ's step-three finding that he has only mild restrictions in his activities of daily living (ADLs) when Dr. Smallwood thought he had moderate restrictions in ADLs.  But the ALJ supported his finding with substantial evidence in the record—statements Mr. Shockley made in his benefits applications that he shopped, sometimes drove, and was able to care for his personal needs.  Even Dr. Smallwood stated that although Mr. Shockley does not do any household chores, he takes care of his personal hygiene, prepares sandwiches, goes to the store once a month, and can handle his money.  And he also opined that Mr. Shockley could perform simple and some complex tasks, can relate to others on a superficial basis, and can adapt to a

---

[7] For these reasons and those stated in the next paragraph, we reject Mr. Shockley's argument that the ALJ erred in not stating what weight he afforded Dr. Smallwood's opinions.

- 12 -

work situation. The ALJ's RFC finding was consistent with these opinions. To reverse on this point would require us to reweigh the evidence, which we may not do. *See Barnett*, 231 F.3d at 689.

## 2. Credibility

The ALJ found Mr. Shockley's testimony regarding his impairments credible only to the extent of the RFC finding.[8] In support, the ALJ gave great weight to the reports of Drs. Kache and Hansen, which he discussed as noted above. He also relied on the most recent treatment reports from Tulsa Urban Clinic, observing that "dizziness is not mentioned" and there was no indication that Mr. Shockley's headaches were "a major concern." Appellant's App., Vol. 2 at 89. And in his step-three analysis, the ALJ noted

---

[8] Mr. Shockley's testimony included the following: His blood pressure, headaches, inability to concentrate and do math, and inability to stand in one spot for very long kept him from succeeding in a job he held for a few days during the insured period pushing carts and working in the deli at Walmart. The right thumb he broke in 2007 still caused him a weak grip, problems dropping things, and trouble with buttons, zippers, and writing. He uses both hands to lift and cannot lift anything heavier than a coffee pot. He has tingling in his legs and feet that lasts through the day and keeps him awake at night. He limits his driving to one or two times a week because he gets blurred vision and dizzy, and he gets dizzy when bending over, reaching overhead, and looking up or down. He recently fell off a couch while trying to tie his shoes. He can stand for 5–10 minutes, and he can sit for 10–40 minutes before needing to get up and walk. He can walk only one block and then is out of breath. Prescription medications are ineffective for his blood pressure and his daily headaches, which last all day with an intensity from 5 to 10 (10 being most severe) and vomiting once or twice a week. He does not do any household chores but sometimes goes to the grocery store with his wife. He takes nitroglycerin two or three times a month, when his chest pain is bad, and Prozac for depression. None of his medications cause side effects. He has considered suicide once or twice a month since being unable to work. The main things keeping him from working are his blood pressure and his chest pains.

- 13 -

that Mr. Shockley wrote in his function report that he shopped and sometimes drove, and he denied that his impairments affected his ability to dress, bathe, shave, or attend to other personal needs.

We conclude that the ALJ closely and affirmatively linked his credibility finding to substantial evidence, and therefore we will not disturb it. *See Hardman*, 362 F.3d at 678-79. Mr. Shockley complains that the ALJ did not state which portions of his testimony he did not find credible, but we require only a discussion that indicates the extent to which the ALJ credited the testimony, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1169-70 (10th Cir. 2012). The ALJ's discussion meets that test. Mr. Shockley also claims the ALJ mischaracterized his application paperwork and other subjective reports, ignoring statements that his impairments make him feel like not eating; that he "get[s] the shakes [and has] bad headaches [and] blurred vision," Appellant's App., Vol. 2 at 258; that he sometimes does not care about his personal hygiene; that he has trouble with buttons and zippers; and that he told Dr. Hansen his ADLs include getting up, drinking coffee, walking a little, and watching television. But the ALJ credited Mr. Shockley with moderate depression, a finding that, as we have seen, is supported by Dr. Hansen's report. Further, the ALJ provided reasons for disbelieving the extent of Mr. Shockley's other claimed limitations or included an appropriate limitation in his RFC finding.

Mr. Shockley contends that the ALJ erred in mentioning only Prozac when in fact he also takes a variety of medications for headache, numbness, angina, chest pain, hypertension, and cholesterol. Although medication type, dosage, effectiveness, and side

effects are among the evidence used to evaluate subjective complaints of pain, *see* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), Mr. Shockley has not suggested (nor can we surmise, in view of the record as a whole) why the ALJ's credibility or RFC findings would have been any different had the ALJ also mentioned any of the other medications, which Mr. Shockley said caused no side effects.

Mr. Shockley further claims the ALJ made an impermissibly vague reference to "other evidence" when stating he had "considered [in making his RFC finding] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Appellant's App., Vol. 2 at 87. This argument is frivolous. In the same sentence and the next, the ALJ indicated what "other evidence" he considered—opinion evidence and the evidence required by 20 C.F.R. §§ 404.1529 and 416.929 and associated Social Security Rulings, which includes daily activities, precipitating and aggravating factors, medications, and pain-relief measures.

Relatedly, Mr. Shockley argues that it is well established that the medical evidence does not have to demonstrate the severity of complaints. This is true to an extent: "[T]he absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987); *see also* SSR 96-7p, 1996 WL 374186, at *6 (July 2, 1996) ("[A]llegations concerning the intensity and persistence of pain or

other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence."). But the ALJ did not violate these precepts. Although he relied heavily on the objective medical evidence, he also relied on opinion evidence and statements Mr. Shockley made about his ADLs.

Finally, Mr. Shockley claims the ALJ erred by not considering his failed attempt to work at Walmart for a few days during the insured period. He argues that, under *Tyson v. Apfel*, 107 F. Supp. 2d 1267 (D. Colo. 2000), this should have bolstered his credibility. But that case is distinguishable because the *Tyson* court thought "*persistent* attempts to work with . . . impairments serve[s] to bolster . . . credibility." *Id.* at 1270 (emphasis added). Here, Mr. Shockley made one attempt of short duration. But even if this were not a meaningful distinction, Mr. Shockley's work effort does not overwhelm the evidence the ALJ relied on, as required for us to conclude that his credibility finding is not supported by substantial evidence. *See Grogan*, 399 F.3d at 1261-62.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

- 16 -